**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

DAN PATTERSON,                         )   No. CV-09-992-PHX-GMS
                                       )
            Plaintiff,                 )   **ORDER**
                                       )
vs.                                    )
                                       )
HOME DEPOT, USA, INC., a foreign       )
corporation; KRAUSE-WERK GmbH &        )
CO. KG, a foreign (German) corporation;)
and  KRAUSE,  INC.,  an  Illinois      )
corporation,                           )
                                       )
            Defendants.                )
_____)

Plaintiff Dan Patterson ("Plaintiff") brings the instant negligence and products liability action against Defendants Home Depot USA, Inc. ("Home Depot"), Krause-Werk GmbH & Co. KG ("Krause-Werk"), and Krause, Inc. (Dkt. # 1.) Pursuant to Federal Rule of Civil Procedure 12(b)(2), Krause-Werk now moves to dismiss the complaint for lack of personal jurisdiction. (Dkt. # 12.) Both Plaintiff and Home Depot filed responsive memoranda opposing Krause-Werk's Motion to Dismiss. (Dkt. ## 17, 20.) Because, based on the facts as presented to date, exercising specific jurisdiction over Krause-Werk would not offend the Due Process Clause of the United States Constitution, as it pertains to at least some of Plaintiff's claims, the Court denies the Motion without prejudice.

# BACKGROUND[1]

On December 11, 2007, Plaintiff was using a sixteen-foot Multi-Matic ladder to install Christmas lights in Phoenix, Arizona when the ladder suddenly collapsed. (Dkt. # 1.) Plaintiff fell from the ladder, sustaining serious and permanent injuries. (*Id.*) The ladder, which was manufactured by Krause, Inc., was purchased sometime after December 1, 1997 from a Home Depot store in Arizona. (Dkt. # 18 at 3.) The Multi-Matic ladder has hinges and a locking bolt that allow it to be manipulated into different positions. Plaintiff alleges that the ladder collapsed because this locking mechanism malfunctioned. (Dkt. # 1.) Plaintiff further alleges that Home Depot, Krause, Inc., and Krause-Werk are liable for the defect.

Krause-Werk is a limited liability company organized under the laws of Germany, with its principle place of business in the city of Alsfeld, Germany. (Dkt. # 12, Ex. 1 at ¶ 2.) Krause-Werk manufactures ladders and scaffolding at facilities in Germany, Hungary, and Poland for sale in Europe. (*Id.* at ¶ 3.) Krause-Werk does not currently manufacture, market, or sell its products in Arizona or anywhere else in the United States. In the early 1980s, Krause-Werk designed, developed, and patented the hinge concepts for the Multi-Matic ladder. Around 1985, Krause-Werk began to distribute and sell its ladders in the United States through an Illinois Distributor, named Demarco. (Dkt. # 18, Ex. D at 76–79.) In 1987, however, Krause-Werk's relationship with Demarco ended due to the latter's failure to meet its financial obligations to Krause-Werk. (*Id.*)

Shortly after its relationship with Demarco ended, Krause-Werk founded Krause, Inc., a wholly-owned subsidiary, for the purpose of distributing ladders in the United States. (*Id.*) Krause, Inc. was an Illinois corporation with its principal place of business in Roscoe,

---

[1]These facts are taken from Plaintiff's complaint and from the affidavits and exhibits attached to the pleadings filed in connection with Krause-Werk's Motion to Dismiss. The Court has accepted allegations in Plaintiff's complaint as true to the extent they are uncontroverted by Defendant's affidavits and exhibits. Where conflicts exist between the facts contained in the parties' affidavits, depositions, and other discovery materials, those conflicts have been resolved in Plaintiff's favor. *See Rio Props. Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Illinois. To form the subsidiary, Krause-Werk initially sold manufacturing equipment to Krause, Inc. (Dkt. # 18, Ex. D at 80–82.) And while Krause-Werk also made loans to Krause, Inc. while it was getting started, Krause, Inc. later repaid these loan in full. (Dkt. # 28 at Ex. C at 22.) Krause-Werk employees also traveled to the Illinois manufacturing facility to train their American counterparts in the parent company's manufacturing, accounting, and payroll processes. (*Id.*) Once Krause, Inc. was formed, Krause-Werk ceased shipping ladders or component parts to the United States. (Dkt. # 28, Ex. C at 19.) From its inception in 1987 until it became insolvent in 2000, Krause, Inc. maintained separate business operations, manufacturing facilities, and headquarters from Krause-Werk. (Dkt. # 12, Ex. 1 at ¶ 13–14.) The subsidiary also kept separate business records, books, accounts, payrolls, and benefit systems. (*Id.*)

At all times relevant to the instant action, Gunther Krause ("Mr. Krause") served as president of both Krause-Werk and Krause, Inc. (Dkt. # 18, Ex. E at 8, 12.) Mr. Krause is the only person who was an officer or director for both companies. When Krause, Inc. was in business, Mr. Krause traveled to the United States two or three times a year in connection with his role as president. (Dkt. # 28, Ex. C at 42.) As President of Krause, Inc., Mr. Krause also received regular reports from Krause, Inc.'s Director of Operations, Ed Hansen ("Mr. Hansen"). (Dkt. # 28, Ex. C at 200–01.)

In 1995, Krause-Werk entered into a licencing agreement with Krause, Inc., which granted the subsidiary an exclusive license to manufacture and sell Multi-Matic ladders in the United States. (Dkt. ## 18, Ex. F at 47–48; Ex. J.) The licencing agreement allowed Krause, Inc. to utilize Krause-Werk's designs, patents and trademarks for its products. (Dkt. # 18, Ex. J.) Pursuant to this agreement, Krause-Werk also granted Krause, Inc. the exclusive right in the United States to utilize the "Multi-Matic" name and emblem on its ladders. (Dkt. # 18, Ex. B at 24.) This same emblem and insignia adorns ladders sold by Krause-Werk in Europe. (*See id.*) The licencing agreement further required Krause, Inc. both to share technical information concerning its ladders with Krause-Werk and to pay a monthly royalty

to the parent. (Dkt. # 18, Ex. B at 82.) From 1995–2001, Krause, Inc. paid approximately $70,000 per year in royalties under the licensing agreement. (Dkt. # 18, Ex. D at 92.)

During the 1990s, Krause, Inc. began to change the materials used in manufacturing the Multi-Matic's locking bolt. (Dkt. 28, Ex. B at 79–80.) In 1992, without any input from Krause-Werk, the subsidiary added a Teflon-containing coating called Xylan to the locking bolt. (Dkt. # 26, Ex. D 135–36.) In May 1997, this time at the direction of Krause-Werk, Krause, Inc. began using manufacturing the locking bolt using die-cast steel rather than zinc. (*See id.*) Krause-Werk initiated the change from zinc to steel when it asked Krause, Inc. to investigate using a steel locking bolt to meet new European standards. (*Id.* at 80–81.) Aside from the change from zinc to steel and use of the Xylan coating, Krause-Werk's original design of the locking bolt remained the same throughout the time period relevant to the instant case. (Dkt. # 18, Ex. G at 16, Ex. H at 91).

In the Spring of 1998, Krause, Inc. began to receive an increasing number of complaints about the Multi-Matic. (Dkt. # 28, Ex. E at 100.) After performing additional tests, Krause, Inc. determined that the Xylan coating made it possible for the locking bolt to become disengaged and the ladder to collapse. (Dkt. # 28, Ex. D at 14; Ex. B at 114.) Due to this defect, Krause, Inc. issued a recall of Multi-Matic ladders that contained the faulty locking mechanism. (Dkt. # 18, Ex. I.) When Krause, Inc removed the Xylan coating, the problem with the hinge and locking bolt stopped. (Dkt. # 28, Ex. D at 14.) Yet, while removing the Xylan solved the problem with the locking mechanism, Krause, Inc. became inundated with personal injury lawsuits, and in 2000, Krause, Inc. filed for bankruptcy and ceased all operations. (*See* Dkt. # 28 at 42.) By 2001, Krause, Inc. entered into Chapter 7 liquidation bankruptcy and was dissolved. (*Id.*)

On March 24, 2009, Plaintiff filed suit against Home Depot, Krause, Inc., and Krause-Werk in Maricopa County Superior Court. After Defendants timely filed a notice of removal, Krause-Werk filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Both Plaintiff and Home Depot oppose the Motion. Plaintiff's lawsuit is the latest in a series of cases involving the Multi-Matic ladder. *See, e.g.*,

*Luc v. Krause-Werk*, 289 F. Supp.2d 1282 (D. Kan. 2003). In previous cases, Krause-Werk, Home Depot and multiple plaintiffs have engaged in discovery with respect to the jurisdictional dispute presented here. *See id.* Accordingly, none of the parties have requested discovery in this case. Instead, the parties have submitted affidavits, writings, and depositions from previous cases involving Krause-Werk to support their respective arguments for and against jurisdiction.

## LEGAL STANDARD

When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props.*, 284 F.3d at 1019. This is so, even though the defendant is the moving party on a 12(b)(2) motion to dismiss. *Id.* In the absence of an evidentiary hearing, however, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009). In considering the motion, a court may "assume the truth of allegations in a pleading" to the extent that such allegations are not "contradicted by affidavit." *See Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1284 (1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)); *see also Rio Props.*, 284 F.3d at 1019 (observing that only "uncontroverted allegations in [the] complaint must be taken as true"). Where there are "conflicts between the facts contained in the parties' affidavits," depositions, and other discovery materials, those conflicts "must be resolved in [the] plaintiff's favor." *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009) (internal alterations and citation omitted). In cases where a plaintiff survives the motion to dismiss under a prima facie burden of proof, the plaintiff still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. *Data Disc*, 557 F.2d at 1285 n. 2.

To establish that personal jurisdiction over Krause-Werk is proper, Plaintiff and Home Depot must demonstrate that (1) Arizona's long arm statute confers jurisdiction over Krause-Werk; and (2) that "the exercise of jurisdiction comports with the constitutional principles of Due Process." *See Rio Props.*, 284 F.3d at 1019 (citation omitted). Because Arizona's

long-arm statute extends jurisdiction "to the maximum extent permitted by the . . . Constitution of the United States," the Court's personal jurisdiction inquiry largely collapses into an analysis of Due Process. *See* Ariz. R. Civ. P. 4.2(a); *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Williams v. Lakeview Co.*, 199 Ariz. 1, 5, 13 P.3d 280, 282 (2000).

## DISCUSSION

In this case, the exercise of jurisdiction over Krause-Werk comports with principles of Due Process. Under the Due Process Clause, a defendant must have sufficient "minimum contacts" with the forum state so that subjecting the defendant to its jurisdiction will not "offend traditional conceptions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Under this standard, "the defendant's conduct and connection with the forum State [must be] such that he [or she] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 (1980). In accord with the Due Process Clause, the "minimum contacts" standard may be satisfied in two ways. First, a court may exercise general jurisdiction when the defendant's contacts with the forum state are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Second, a court may exercise specific jurisdiction if a defendant "has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985) (internal quotation omitted). "In addition to establishing the requisite contacts, the assertion of jurisdiction must be found reasonable." *Bauman*, 579 F.3d at 1094 (internal quotation omitted).

In cases where a defendant has a wholly-owned subsidiary that possesses minimum contacts, the subsidiary's contacts may be imputed to the defendant if the plaintiff demonstrates that the subsidiary acted as an alter-ego or general agent of the defendant. *Id.*; *see also Davis,* 885 F.2d at 520. In this case, however, Krause-Werk is not subject to general jurisdiction. Likewise, to the extent that its subsidiary, Krause, Inc., is subject to jurisdiction

in Arizona, it does not appear to the Court, based on the facts presented, that Krause Inc's contacts are attributable to Krause-Werk on the basis of alter-ego or agency theory. Nevertheless, the Court finds that Plaintiff and Home Depot have presented sufficient allegations and evidence to support a prima facie case for specific jurisdiction as it pertains to Plaintiff's claims of design defect and/or negligent design.

## I. Collateral Estoppel Does Not Bar Krause-Werk from Contesting Jurisdiction.

As a preliminary matter, the Court rejects Plaintiff's contention that collateral estoppel precludes Krause-Werk from contesting personal jurisdiction. Under Arizona law, the elements of collateral estoppel are: (1) "the issue was actually litigated in the previous proceeding;" (2) "there was a full and fair opportunity to litigate the issue;" (3) the "resolution of the issue was essential to the decision;" (4) there was a valid and final decision on the merits;" and (5) "there is common identity of the parties." *See Irby Constr. Co. v. Ariz. Dep't. of Revenue*, 184 Ariz. 105, 107, 907 P.2d 74, 76 (Ct. App. 1995) (citing *Chaney Bldg. Co. v. Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986)).

In this case, collateral estoppel does not apply because the issue of whether Krause-Werk is subject to personal jurisdiction in Arizona has not been "actually litigated in a previous proceeding." *See id.* Plaintiff alleges that Krause-Werk is barred from contesting personal jurisdiction because a district court in Kansas, applying Kansas law, determined that Krause-Werk was subject to jurisdiction in Kansas. *See Luc*, 289 F. Supp.2d at 1289–91. In this case, however, the issue is not whether Krause-Werk is subject to personal jurisdiction in Kansas, the question is whether Krause-Werk is subject to jurisdiction in Arizona. *See Collins v. Miller & Miller, Ltd.*, 189 Ariz. 387, 397 n. 5, 943 P.2d 747, 757 n. 5 (1996) ("Collateral estoppel precludes relitigation of issues that are . . . *identical* to those issues already litigated by the parties . . . .") (emphasis added). And, while the *Luc* court ultimately determined that Krause-Werk was subject to jurisdiction on the basis of alter-ego theory, that court did so applying Kansas's law. Arizona's alter-ego theory relies on a different set of factors to determine whether to pierce the corporate veil. *Compare Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991) *with Luc*, 289 F. Supp.2d

at 1289. Accordingly, because the issues presented in this case have not already been litigated, collateral estoppel does not apply.

Moreover, the Court is reluctant to apply collateral estoppel to the jurisdictional question in this case since multiple state and federal courts have reached inconsistent judgments with respect to whether Krause-Werk is subject to jurisdiction in the United States. *See Parklane Hosiery Co. v Shore*, 439 U.S. 322, 331 (1979). In *Parklane*, the Supreme Court observed that one of the factors to consider in applying collateral estoppel is whether there are prior, inconsistent judgments. *Id.* at 332. Here, numerous courts have reached inconsistent results as to whether Krause-Werk is subject to the courts' jurisdiction. While the court in *Luc* determined that Krause-Werk was subject to its jurisdiction, *see* 289 F. Supp.2d at 1291, other courts have concluded otherwise. *See, e.g.*, *Smith v. Home Depot*, 294 F. App'x. 186 (6th Cir. 2008).

## II.     Krause-Werk Is Not Subject to General Jurisdiction in Arizona.

First, a court may assert general jurisdiction over a defendant if the defendant's activities in the state are substantial or continuous and systematic, even if the cause of action is unrelated to those activities. *Helicopteros*, 466 U.S. at 415; *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)); *Data Disc*, 557 F.2d at 1287 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952)).

Plaintiff and Home Depot fail to provide any legal basis for general jurisdiction over Krause-Werk. Krause-Werk is a limited liability company organized under the laws of the Federal Republic of Germany, with its principle place of business in Germany. Moreover, there is no evidence that Krause-Werk manufactures, markets, or sells its ladders or other products in Arizona or anywhere else in the United States. Here, Home Depot appears to suggest that jurisdiction is proper because Krause-Werk allegedly purchased component parts for their European ladders from Climbtek, Inc., a company incorporated in Illinois, as recently as 2004. Purchasing a component product from an Illinois manufacturer, however, without more, is insufficient to subject Krause-Werk to general jurisdiction in Arizona—especially when the alleged purchase occured more than five years prior to the this

lawsuit and that purchase is unrelated to the instant lawsuit. Accordingly, Krause-Werk does not have substantial, continuous, or systematic contacts with Arizona sufficient to give rise to general jurisdiction.

Furthermore, none of the cases that have previously addressed whether Krause-Werk is subject to jurisdiction in a United States forum have determined that Krause-Werk was subject to general jurisdiction. *See Smith,* 294 F. App'x. at 186; *Czarnecki v. Krause, Inc.*, 2008 WL 4083173 (E.D. Pa. Aug. 28, 2008); *Luc*, 289 F. Supp.2d at 1282; *Whelan v. Krause, Inc.*, No. 01-CV-0783-JHR (D. N.J. Dec. 21, 2001) ("*Whelan I*"); *Whelan v. Krause, Inc.*, No. 01 C 9963 (N.D. Ill. June 6, 2003) ("*Whelan II*"); *Day-Swatley v. Krause, Inc.*, No. 0811-CV-0466 (Mo. Cir. Ct. July 15, 2009); *Crane v. Home Depot*, 2008 WL 2231472 (Del. Super. Ct. May 30, 2008).

**III.    On the Facts Set Forth, Krause-Werk Is Not Subject to Jurisdiction as an Alter-Ego of Krause, Inc.**

Under the "alter-ego" doctrine, a nonresident defendant may be subject to personal jurisdiction even if the defendant has not had any contact with the forum state. *See Davis*, 885 F.2d at 520–21. This doctrine allows a subsidiary corporation's contacts with a forum to be imputed to the parent when a plaintiff makes a prima facie showing that the "parent and subsidiary are not really separate entities . . . ." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). In diversity cases, federal courts must look to state law to determine whether a parent company should be treated as the alter-ego of a subsidiary for jurisdictional purposes. *See Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1227 (9th Cir. 2005) (noting that in diversity actions, federal courts must apply state law when evaluating alter-ego status); *see also Davis*, 885 F.2d at 520–21 (sitting in diversity and applying Arizona's test for piercing the corporate veil to determine whether a subsidiary's contacts should be imputed to the parent). Under Arizona law, "corporate status will not be lightly disregarded." *Chapman v. Field*, 124 Ariz. 100, 102, 602 P.2d 481, 483 (1979). To pierce the corporate veil or demonstrate alter-ego status, a "plaintiff[] must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff*, 170

Ariz. at 37, 821 P.2d at 728. In determining whether a parent and subsidiary share "unity of control," Arizona courts consider the following factors:

> stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence.

*Id.* In addition, the parent corporation must exert "substantially total control" over the subsidiary so that the subsidiary becomes "a mere instrumentality" of the parent. *Id.*; *Taeger v. Catholic Family & Cmty. Serv.*, 196 Ariz. 285, 297–98, 995 P.2d 721, 733–34 (Ct. App. 2000).

In this case, Plaintiff and Home Depot fail to make a prima facie showing that Krause, Inc.'s contacts should be imputed to Krause-Werk on the basis of the alter-ego doctrine because Plaintiffs fail to present evidence that Krause-Werk exerted "substantially total control" over Krause, Inc. *See Gatecliff*, 170 Ariz. at 37, 821 P.2d at 728. To begin with, Plaintiff and Home Depot do not present any facts demonstrating that Krause, Inc. failed to maintain formalities of separate corporate existence, that Krause-Werk paid the salaries of Krause, Inc. employees, or that Plaintiff was unaware of the company's separate corporate existence. *See id.* Instead, Krause-Werk has presented undisputed evidence that Krause, Inc. paid Krause-Werk for any supplies it obtained from the subsidiary and that the companies engaged in all their financial transactions at arm's length. To be sure, the officers of Krause, Inc. periodically provided company reports to Mr. Krause and to Krause-Werk; nevertheless, the undisputed facts indicate that Krause, Inc.'s officers and directors controlled the company's day-to-day operations as Krause, Inc. maintained separate business operations, manufacturing facilities, and headquarters from Krause-Werk. (Dkt. # 12, Ex. 1 at ¶ 13–14.) The subsidiary also kept separate business records, books, accounts, payrolls, and benefit systems. (*Id.*) And while Mr. Hansen once referred to Krause, Inc. as a "plant" of Krause-Werk (Dkt. # 18, Ex. G at 20–21.), this is insufficient to surmount the undisputed evidence that the two companies honored corporate formalities.

Similarly, Mr. Krause's position as president of both Krause-Werk and Krause, Inc. is insufficient to justify disregarding the corporate form. In *United States v. Bestfoods*, the Supreme Court made clear that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." 524 U.S. 51, 69 (1998) (internal quotations and citations omitted). "This recognition that the corporate personalities remain distinct has its corollary in the well established principle . . . that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership." *Id.* (internal quotation marks and citation omitted). Plaintiff and Home Depot present nothing to suggest that Mr. Krause was acting on behalf of Krause-Werk when serving as Krause, Inc.'s president and periodically traveling to the United States in that role.

The Court further rejects Plaintiff's contention that the Court should treat Krause, Inc. and Krause-Werk as alter-egos on the basis that Krause-Werk financed the wholly owned subsidiary. Even though Krause-Werk made start-up loans to Krause, Inc., it is undisputed that Krause, Inc. repaid these loans in full with interest. (Dkt. # 28, Ex. B at 201.) Likewise, the Court rejects the argument that Krause-Werk was inadequately capitalized. "For an enterprise to be considered undercapitalized, the amount of capital must be illusory or trifling" at the time the subsidiary is established. *Keams v. Tempe Technical Inst.*, 993 F. Supp. 714, 723–24 (D. Ariz. 1997) (internal quotation omitted). Plaintiff and Home Depot present no facts suggesting that the amount of Krause, Inc.'s capital was inadequate when it was formed. Given that Krause, Inc. operated independently for over thirteen years, it cannot be said that the amount of capitalization when the company was established was "illusory or trifling." *Id.* In addition, the undisputed evidence indicates that Krause, Inc. was adequately capitalized to pay employee salaries and other expenses until the company became inundated with personal injury lawsuits in the late 1990s. (Dkt. # 12, Ex. 1 at ¶¶ 13–14.)

The fact that the two companies used the same logo and intellectual property pursuant to the licencing agreement also does not demonstrate that Krause-Werk was the alter-ego of the other. The mere identity of corporate logos, without more does not establish that one company dominated another's business activities or acted as its alter-ego. *See Von Grabe v. Sprint PCS*, 312 F. Supp.2d 1285, 1301 (S.D. Cal. 2003) (holding that common trade name and logo, without more, is not a sufficient basis for establishing personal jurisdiction) (internal citations omitted). Moreover, in finding that Krause-Werk was not subject to jurisdiction in New Jersey, the district court in *Whelan I* observed, "The use of a common trademarked logo and other intellectual property . . . is not indicative of parental control over the subsidiary. To the contrary, the agreement and the compensation paid by Krause, Inc. show that the two corporations were dealing with each other as separate and independent entities dealing at arm's length." No. 01-CV-0783-JHR at *24.

While it is true that Plaintiff and Home Depot have presented facts that establish a connection between the two companies, these facts do not demonstrate that Krause-Werk exercised substantially total control over the management and activities of Krause, Inc. As the Ninth Circuit observed in *Unocal*, some degree of control over a subsidiary is to be expected:

> [a] parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is consistent with the parent's investor status. Appropriate parental involvement includes: monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.

248 F.3d at 926 (citing *Bestfoods*, 524 U.S. at 69) (internal alterations and quotation omitted). At most, Plaintiff and Home Depot present facts that are consistent with Krause-Werk's status as a parent company interested in its subsidiary's activities.

The Court also is not persuaded by those courts that have found Krause-Werk subject to jurisdiction on the basis of an alter-ego theory. *See Luc*, 289 F. Supp.2d at 1289; *see also Considine v. Home Depot*, No. CA 010187 (Palm Beach County Ct. Oct. 31, 2007), *aff'd*, 2009 WL 189402 (Fla. Dist. Ct. App. Jan. 28, 2009). In *Luc*, for instance, the court

determined that the parties presented sufficient evidence to find that Krause, Inc. was Krause-Werk's alter-ego under Kansas law. 289 F. Supp.2d at 1289. In this case, however, the Court does not read Arizona's strict standard for establishing alter-ego status as broadly as the District of Kansas read its test for determining whether a parent company should be treated as the alter-ego of its subsidiary for the purpose of personal jurisdiction. Critical in this distinction is the degree of control necessary to establish alter-ego status in Arizona. In the instant case, Plaintiff and Home Depot simply have not provided sufficient facts for the Court to conclude that Krause, Inc. is the mere shell or "instrumentality" of Krause-Werk. *See* *Taeger*, 196 Ariz. at 297–98, 995 P.2d at 733–34; *see also Czarnecki*, 2008 WL 4083173 at *6 ("Because plaintiffs and Home Depot have failed to demonstrate a unity of interest and ownership such that the separate personalities of Krause-Werk and Krause, Inc. no longer existed, we will not pierce the corporate veil against Krause[-]Werk and hold it liable for the conduct of its subsidiary."); *Whelan I*, No. 01-CV-0783-JHR at *26 ("Plaintiff has simply failed to come forward with any evidence that the relationship between [Krause-Werk] and Krause, Inc. was anything other than a bonafide parent/subsidiary relationship which legitimately insulates one from the liabilities of the other.") (internal alterations and quotation omitted); *Whelan II*, No. 01 C 9963 at *17 (holding that the plaintiff "failed to offer sufficient facts to pierce [Krause-Werk's] corporate veil").

**IV. On the Fact's Set Forth, Krause-Werk Is Not Subject to Jurisdiction as Krause, Inc.'s Principal.**

In addition to the alter-ego doctrine, a local subsidiary's contacts with a forum state may also be imputed to the foreign parent when the subsidiary acts as a general agent for the parent. *See, e.g.*, *Bauman*, 579 F.3d at 1094. Under the "agency test," a mere agency relationship is insufficient to impute a subsidiary's contacts onto the parent. *Id.* Rather, the exercise of jurisdiction is proper only when the parent exercises "a high degree of control" over the subsidiary. *Id.* at 1096. Under the facts presented to date in this case, the agency test does not confer jurisdiction on Krause-Werk for two reasons: (1) Plaintiff fails to show that Krause, Inc. acted as Krause-Werk's general agent under Arizona law; and (2) Plaintiff does

not show that Krause-Werk exerted sufficient control over Krause, Inc. to subject Krause-Werk to personal jurisdiction.

## A. Agency Under Arizona Law

Because the Court is sitting in diversity, it first looks to state law to determine whether Krause, Inc. and Krause-Werk formed an agency relationship. *See Hambleton Bros. Lumber Co.*, 397 F.3d at 1227 (9th Cir. 2005) (observing that federal courts apply state substantive law in diversity actions). Under Arizona law, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Ruesga v. Kindred Nursing Ctrs.*, 215 Ariz. 589, 597, 161 P.3d 1253, 1261 (Ct. App. 2007) (quoting Restatement (Third) of Agency § 1.01 (2006)) (internal quotation marks omitted). "An agency relationship can derive from either actual or apparent authority." *Id.* (citations omitted). A principal manifests actual authority when it enters into an "express contract of agency" with an agent or when the circumstances imply "such [a] contract or the ratification thereof." *Corral v. Fidelity Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (Ct. App. 1981). In contrast, apparent authority exists when "the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent." *Curran v. Indus. Comm'n*, 156 Ariz. 434, 437, 752 P.2d 523, 526 (Ct. App. 1988) (internal quotation marks and citation omitted).

Plaintiff and Home Depot fail to make a prima facie showing of an agency relationship between Krause, Inc. and Krause-Werk. To support their argument that Krause, Inc. operated as Krause-Werk's agent, Plaintiff and Home Depot aver the following:

> Krause, Inc. marketed and distributed ladders to Home Depot, a Delaware corporation with retail stores in every state in the United States, and the ladder that is the subject of this current dispute was purchased at a Home Depot store in Phoenix.

(Dkt. # 17 at 15.) This averment, however, does not sufficiently demonstrate an agency relationship between Krause, Inc. and Krause-Werk, as these facts do not reference an

express or implied agency agreement between the two companies. And, while Krause-Werk and Krause, Inc. did enter into a licencing agreement whereby the subsidiary was authorized to use the parent's intellectual property, this licencing agreement, without more, is insufficient to establish an agency relationship. *See Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1236–39 (holding that licencing agreements do not in and of themselves create an agency relationship under Arizona law). Plaintiffs and Home Depot also point to nothing in the record which indicates that Krause-Werk intentionally or inadvertently induced Plaintiff or anyone else to believe that Krause, Inc. was its agent.

### B. Control

Moreover, even if Krause, Inc. and Krause-Werk had entered into a traditional agency relationship, this alone would be insufficient to impute Krause, Inc.'s contacts to Krause-Werk. 579 F.3d at 1096. Under the Ninth Circuit's agency test, a subsidiary's contacts will be imputed to the parent only when the parent exerts "a high degree of control" over the subsidiary. *Bauman*, 579 F.3d at 1096. In addition, "the plaintiff must make a prima facie showing that the subsidiary represents the parent corporation by performing services 'sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the [parent] . . . would undertake to perform substantially similar services.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)). The "test permits the imputation of contacts where the subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself.'" *Bauman*, 579 F.3d at 1094–95 (citing *Harris Rutsky*, 328 F.3d at 1122). And while the Ninth Circuit's agency test was initially promulgated in cases involving federal question jurisdiction, *see, e.g.*, *Unocal*, 248 F.3d at 928, subsequent courts have applied the test to matters arising in diversity. *See, e.g.*, *Watson v. Societe Nationale Industrielle Aerospatiale*, 225 F. App'x. 716, 717–18 (9th Cir. 2007) (applying the agency test in a diversity case).

Plaintiff and Home Depot fail to present any facts indicating that Krause-Werk exerted pervasive control over Krause, Inc. To be sure, Krause-Werk was involved in some of Krause, Inc.'s operations and did implement certain policies and procedures. Nevertheless, under the Ninth Circuit's agency test, control over the subsidiary must be over and above that which is "to be expected as an incident of ownership." *Bauman*, 579 F.3d at 1095. "'Appropriate parental involvement includes: monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.'" *Id.* (quoting *Unocal*, 248 F.3d at 926). Here, it is undisputed that Krause, Inc. had control over its primary day to day operations.

Moreover, Plaintiff and Home Depot do not present any facts suggesting that Krause, Inc. was "either established for, or is engaged in, activities that," but for Krause, Inc.'s existence, Krause-Werk "would have . . . undertake[n] itself.'" *Bauman*, 579 F.3d at 1094–95. Indeed, the fact that Krause-Werk "previously used independent distributors," such as Demarco, "militates against a finding" that without Krause, Inc., Krause-Werk "would personally market and distribute" its ladders in Arizona. *See id.* at 1096–97.

## V.     Krause-Werk May Be Subject to Specific Jurisdiction in Arizona.

A court may exercise specific jurisdiction over a defendant when the cause of action arises directly from the defendant's contacts with the forum state. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (1990). The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under this three-part inquiry, specific jurisdiction exists only if: (1) the defendant *purposefully availed* itself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has effects in the forum; (2) the claim *arises out* of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is *reasonable*. *Id.*; *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)). Under this three-step analysis, the Court finds that Krause-Werk may be subject to specific jurisdiction in Arizona.

### A. "Purposeful Availment" Requirement

A defendant has purposefully availed itself of a forum when it "has taken deliberate action within the forum state or . . . has created continuing obligations to forum residents." *Ballard*, 65 F.3d at 1498. Although contacts must be more than random, fortuitous, or attenuated, contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum. *Burger King*, 471 U.S. at 472–73, 75. For instance, where a defendant directs tortious conduct toward the forum state, knowing the effects of the conduct could cause harm, jurisdiction is proper. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). In addition, placing a defective "product into the stream of commerce" combined with "an intent or purpose to serve the market in the forum state" constitutes purposeful availment. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion); *see also Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). This is so, even if a defendant has no physical presence within the forum. *Burger King*, 471 U.S. at 472–73.

Krause-Werk purposefully availed itself of jurisdiction in Arizona because the Company placed its design for the Multi-Matic ladder into the "stream of commerce" and directed that design toward U.S. consumers by establishing an American subsidiary and giving that subsidiary a license to manufacture ladders in accordance with that design. With respect to a design or manufacturing defect, the Supreme Court has held that a defective or negligent design may be sufficient to establish specific jurisdiction when a defendant directs the design to a particular forum. *See Asahi Metal*, 480 U.S. at 112. In so holding, Justice O'Connor's plurality decision provided that a defendant may be subject to personal jurisdiction when he or she places an item or design into the "stream of commerce" and "purposefully directs" the item or design toward the forum state by "designing the product for the market in the forum State, advertising in the forum State, establishing channels for

providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

Plaintiff and Home Depot have made a prima facie showing that Krause-Werk directed an allegedly "tortious" design towards Arizona. *Calder*, 465 U.S. at 789–90 According to Plaintiff and Home Depot, Krause-Werk designed its ladders with a defective locking mechanism which was positioned so that users might inadvertently bump it while on the ladder, causing it to disengage, and the ladder to collapse. (Dkt. # 17 at 2.) Krause-Werk does not provide any evidence to dispute these allegations. *See Rio Props.*, 284 F.3d at 1019 (noting plaintiff's "uncontroverted allegations . . . must be taken as true" when resolving a motion to dismiss for lack of personal jurisdiction). Plaintiff has also presented affidavit and deposition evidence indicating that the Krause, Inc. never altered the location of release mechanism while it was in business. (Dkt. # 18, Ex. B at 27.) Furthermore, inasmuch as Krause-Werk designed the ladder according to American standards and sought United States patents for those designs, it can fairly be said that Krause-Werk "designed" this locking mechanism "for the market" in states such as Arizona. *See Asahi Metal*, 480 U.S. at 112. By licensing its subsidiary to disseminate products manufactured in accordance with an allegedly defective design, Krause-Werk should have anticipated being haled into court in the instance that the design had a harmful effect on residents of Arizona. *See, e.g.*, *Calder*, 465 U.S. at 789–90.

In finding that Plaintiff and Home Depot have made a prima facie showing of jurisdiction, the Court notes that Krause-Werk has submitted evidence that the alleged defect in this case was due to Krause, Inc.'s decision to change the materials utilized in the Multi-Matic. Specifically, Krause-Werk has submitted affidavit evidence indicating that Krause, Inc.'s ladders failed in the mid-1990s when Krause, Inc., rather than Krause-Werk, began using a chemical known as Xylan to coat the Multi-Matic's locking bolt. According to Krause-Werk, the ladders stopped collapsing when the Xylan coating was removed. Krause-Werk therefore argues that it should not be subject to jurisdiction in Arizona because the defect is a result of Krause, Inc.'s independent decision to use defective materials. This

argument, however, fails to address Plaintiff's allegations that the defect was, in whole or in part, the location or position of the locking mechanism. Because Krause-Werk has not submitted any evidence to counter these specific allegations, the Court must treat those allegation as true for the purposes of Krause-Werk's Motion to Dismiss.[2]

In addition, the Court rejects Krause-Werk's other arguments against purposeful availment. First, relying on the Sixth Circuit's unpublished decision in *Smith*, Krause-Werk argues that it cannot be held subject to jurisdiction in the State of Arizona because it never required Krause, Inc to market and sell ladders to Arizona residents. *See* 294 F. App'x. at 190. In *Smith*, the court observed that "Krause-Werk surely placed [its design] in the 'stream of commerce'" but ultimately denied jurisdiction. *Id.* In declining to exercise jurisdiction, the Sixth Circuit observed that Krause-Werk directed is products towards the United States in general, but it did not direct its design towards Tennessee because Krause-Werk did not *require* Krause, Inc. to market its ladders in that forum. *Id.* In the instant case, however, the Court does not find this analysis to be persuasive as this approach appears to be a departure from Justice O'Connor's plurality opinion in *Asahi Metal*, where the Supreme Court held:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly* or *indirectly*, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others.

480 U.S. at 110 (emphasis added) (quoting *World-Wide Volkswagen*, 444 U.S. at 297). In this case, the evidence demonstrates that Krause-Werk established an American subsidiary and

---

[2]The Court is also hesitant to base its jurisdictional analysis on Krause-Werk's evidence that it was not responsible for the alleged design defect. Ultimately, whether Krause-Werk designed the locking bolt goes to the merits of this case. And while "personal jurisdiction is ordinarily determined at the outset as a threshold matter, in this case that issue is inexorably intertwined with the merits." *Sandpiper Vill. Condo. Ass'n. v. La.-Pac. Corp.,* 428 F.3d 831, 840 n. 12 (9th Cir. 2005). Accordingly, "the Court should defer its ruling on the personal jurisdiction issue until after merits discovery is completed." *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2009 WL 455555 at *14 (D. Nev. Feb. 23, 2009).

entered into a nationwide licensing agreement with it under which the subsidiary was to manufacture and market ladders with Krause-Werk's design in the United States. This manifested an intent to directly serve American customers. In addition, the approach adopted in *Smith* has the potential to lead to absurd practical results. Under *Smith*, a defendant could direct a distributor to manufacture and market defective products to the United States market in general, yet avoid jurisdiction in any United States forum. *See, e.g.*, *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 285 (3rd Cir. 1981) (observing that to allow a defendant that has purposefully exploited the United States market to "insulate itself from the reach of the forum State's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products" would undermine principles of fundamental fairness and due process); *see also Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543–45 (6th Cir. 1993) (permitting Kentucky to exercise personal jurisdiction over a foreign drug manufacturer, which entered into a distribution agreement whereby its drug would be marketed to all fifty states). Accordingly, rather than adopt the rule in *Smith*, the Court holds that a manufacturer or designer can be found to have directed a product at a specific forum when he or she intends, and takes affirmative steps, to deliver a defective product to the United States as a whole with reason to know that the product will be marketed in the forum state. *See Asahi Metal*, 480 U.S. at 110; *see also DeJames*, 654 F.2d at 285; *Tobin*, 993 F.2d at 543–45; *A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 574, 892 P.2d 1354, 1363 (1995) (asserting jurisdiction over a foreign defendant who marketed products to the United States in general, even though there was no evidence that the defendant specifically intended to market the product in Arizona). If a product manufacturer or designer "does not want to subject itself to the jurisdiction of [an Arizona Court] while targeting the United States market, then it must take some reasonable steps to prevent the distribution of its products in this State." *See Nicastro v. McIntyre Machinery Am., Ltd.*, ___ A.2d ___, 2010 WL 343563, at *15 (N.J. 2010) (citation omitted). In this case, Krause-Werk did nothing to prevent the distribution of ladders, manufactured according to its allegedly defective design, to Arizona.

Next, Krause-Werk argues that the stream of commerce analysis does not apply in this case because it merely designed, rather than manufactured, the allegedly defective ladder. (Dkt. # 26 at 14.) This argument, however, contradicts the Supreme Court's holding in *Asahi Metal*, where the Court specifically observed that designing a product for the forum market may subject an entity to personal jurisdiction under the stream of commerce theory. 480 U.S. at 112. Several district courts have further explicitly rejected Krause-Werk's suggested approach and applied the stream of commerce test in the context of a defective design. *See, e.g.*, *Cole v. Tobacco Inst.* 47 F. Supp.2d 812, 815 (E.D. Tex. 1999) (holding that contributing to the marketing, research and design of a product qualifies a corporation as a manufacturer under the stream of commerce theory); *Hawes v. Honda Motor Co.*, 738 F. Supp. 1247, 1251 (E.D. Ark. 1990) (holding that a motorcycle designer subject to personal jurisdiction under a stream of commerce theory because a design can be considered a product); *Warren v. Honda Motor Co.*, 669 F. Supp. 365, (D. Utah 1987) (also holding that motorcycle designers qualify as manufactures); *Wessinger v. Vetter Corp.*, 685 F. Supp. 769, 777 (D. Kan. 1987) (same). Indeed, under Krause-Werk's approach , a foreign company could circumvent jurisdiction by designing a defective product and then directing that product to American consumers by marketing that product through a licensed distributor.

The Court also rejects Krause-Werk's argument that subjecting it to jurisdiction would in turn subject "every basement inventor in the world" to jurisdiction for the products he or she designs. (*See* Dkt. # 26 at 14 (citing *Whelan I*, No. 01-CV-0783-JHR at *26).) While this argument might have merit if Krause-Werk had never directed its design for the Multi-Matic towards the United States, the evidence in this case clearly demonstrates that Krause-Werk took concerted efforts to ensure that its design reached American consumers. By establishing an American subsidiary and entering into a licensing agreement whereby that subsidiary was directed to manufacture and market ladders using Krause-Werk's design in the United States, Krause-Werk has clearly demonstrated that it intended the allegedly defective design to be distributed to residents of the United States, including Arizona.

Finally, the Court rejects Krause-Werk's contention that the Court should refuse to find purposeful availment under the stream of commerce theory because other courts have declined to do so. (*See* Dkt. # 26 at 14.) While it is true that some courts have denied jurisdiction over Krause-Werk under a stream of commerce theory, those courts were not presented with the same undisputed factual allegations and evidence that is at issue in this case. In addition, several other courts have found Krause-Werk subject to specific jurisdiction under a stream of commerce theory. *See, e.g.*, *Crane*, 2008 WL 2231472 at *4. In *Crane*, for example, the Delaware Superior Court determined that there was evidence that Krause-Werk was responsible for the defective locking mechanism. *Id.* Personal jurisdiction was proper since Krause-Werk directed the design of the locking mechanism towards residents of the United States, including Delaware. *Id.* As discussed above, Plaintiff in this case has alleged that the defect was not merely the result of the materials utilized in the composition of the locking mechanism. Here, the Court must accept as true, for the purposes of this Order, the uncontroverted allegation that the location of the release mechanism caused the defect.

## B. "Arising Out Of" Requirement

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of a defendant's forum related activities. *See Omeluk*, 52 F.3d at 271. The "arising out of" requirement is met if but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom v. Valey Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995). In *Shute v. Carnival Cruise Lines*, the Ninth Circuit reasoned that:

> The 'but for' test is consistent with the basic function of the 'arising out of' requirement—it preserves the essential distinction between general and specific jurisdiction. Under this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction. . . . The 'but for' test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds*, 499 U.S. 585 (1991).

Absent Krause-Werk's contacts with Arizona, the cause of action in the instant case would not have arisen. Plaintiff and Home Depot have sufficiently alleged that Krause-Werk designed its ladders with a defective locking mechanism which was positioned so that users might inadvertently bump it while on the ladder, causing it to disengage and the ladder to collapse. (Dkt. # 17 at 2.) Plaintiff has further provided evidence that Krause-Werk directed this design towards the United States and citizens of Arizona by establishing an American subsidiary and licensing that subsidiary to market the ladder for sale in the United States. In other words, but for Krause-Werk's decision to direct the allegedly defective design towards the United States, Plaintiff would not have been injured by the collapse of his Multi-Matic ladder.

### C.    "Reasonableness" Requirement

Even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied, an unreasonable exercise of jurisdiction violates the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316 (1945); *Ziegler*, 64 F.3d 470, 474–75 (9th Cir. 1995). A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *See Ballard*, 65 F.3d at 1500. If the first two requirements are satisfied, then the burden of proof shifts and the defendant must "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

In this case, Krause-Werk has not presented any facts or evidence suggesting that jurisdiction would be unreasonable. Accordingly, because the first two requirements of the specific jurisdiction test are met, the Court presumes that jurisdiction over Krause-Werk is reasonable. *See id.*

### CONCLUSION

For the foregoing reasons, Plaintiff and Home Depot have presented a prima facie case for subjecting Krause-Werk to jurisdiction in Arizona. Should Krause-Werk renew its jurisdictional challenge as this matter proceeds towards trial, Plaintiff and Home Depot will

have the burden of demonstrating by a preponderance of the evidence that jurisdiction is proper. In addition, to the extent that additional discovery brings to light new facts regarding general jurisdiction, agency jurisdiction, or alter-ego jurisdiction, the Court will allow Plaintiff and Home Depot to reassert jurisdiction on those theories.

**IT IS THEREFORE ORDERED:**

1. Defendant Krause-Werk's Motion to Dismiss (Dkt # 12) is **DENIED** without prejudice.

2. Plaintiff's Motion to Strike Krause-Werk's Supplemental Citation of Authority or to Permit the Filing of a Response (Dkt. # 31) is **GRANTED** as the supplemental authority is irrelevant to the issues addressed in this Order; therefore, the Clerk of the Court is directed to strike Krause-Werk's Filing of Supplemental Authority (Dkt. # 30).

DATED this 16th day of February, 2010.

_____
G. Murray Snow
United States District Judge